UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOUGLAS MACARTHUR GUILE, II,    )
# 429156,                       )
                                )
                  Plaintiff,    )        Case No. 1:15-cv-1069
                                )
v.                              )        Honorable Gordon J. Quist
                                )
STEVEN E. SCHNEIDER, et al.,    )
                                )
                  Defendants.   )
_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint arises out of conditions of his confinement at the Michigan Reformatory (RMI). The defendants are employed at RMI by the Michigan Department of Corrections (MDOC): Assistant Resident Supervisor (ARUS) Steve Schneider, Corrections Officer Christopher Vandenakker, ARUS Laci Grembowski, Resident Unit Manager (RUM) Robert Sutherland, Gregory Skipper, Meashell Lawson, and Corrections Officer Kurt Schafer. Plaintiff sues defendants in their individual and official capacities and seeks an award of damages.

The matter is before the Court on defendants' Rule 12(b)(6) motion seeking dismissal of plaintiff's claims against defendants in their individual capacities on the basis of qualified immunity. (ECF No. 25). Plaintiff opposes the motion.[1] (ECF No.

---

[1] Plaintiff's declaration (ECF No. 33) is not part of his complaint and it is not an attachment to his pleading that could be considered under FED. R. CIV. P. 10(c). The

32).

For the reasons set forth herein, I recommend that defendants' motion to dismiss be granted in part and denied in part. I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I recommend that all plaintiff's claims against defendants Schafer and Sutherland be dismissed for failure to state a claim upon which relief can be granted.[2] I recommend that defendants' motion be granted as to all plaintiff's claims against defendants Vandenakker, Schneider, and Grembowski. I recommend that defendants' motion be denied on plaintiff's First Amendment retaliation claims against defendants Lawson and Skipper.

A.    Rule 12(b)(6)

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and FED. R. CIV. P. 8(a)(2)). While this notice pleading

---

declaration is excluded from consideration herein.

[2] The recommendations for dismissal of plaintiff's claims for damages against defendants immune from such relief and for failure to state a claim upon which relief can be granted are made pursuant to statutory authority. *See* 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B)(ii).

standard does not require "detailed" factual allegations, it does require more than labels and the bare assertion of legal conclusions.  *See Twombly*, 550 U.S. at 555.

Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor.  *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009); *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).  Courts are not required to conjure up unpleaded allegations, nor accept unwarranted factual inferences.  *See Total Benefits Planning*, 552 F.3d at 434.  "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.' " *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting Twombly, 550 U.S. at 570); *see Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Even the lenient treatment generally given pro

se pleadings has its limits, however.  *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).  "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678).  "A plaintiff falls short if [] he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

      B.    <u>Qualified Immunity</u>

Defendants argue that they are entitled to dismissal of plaintiff's claims for damages against them in their individual capacities on the basis of qualified immunity.  "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' " *LeFever v. Ferguson*, 645 F. Appx  438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Estate of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014).  The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The

second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). Here, defendants seek dismissal under Rule 12(b)(6).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted); *Mitchell v. Schlabach*, 864 F.3d 416, 424 (6th Cir. 2017). Qualified immunity is an immunity

from suit rather than a mere defense to liability.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' "  *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552.

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' "  *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Estate of Hill v. Miracle*, 853 F.3d at 312 ("[T]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.") (quotation and citation omitted).  The burden applies to each claim.  *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

C.    Plaintiff's Allegations

Plaintiff was an inmate at the Michigan Reformatory (RMI) during the period at issue.  (Compl. ¶ 5, ECF No. 1, PageID.7).  His factual allegations against each defendant are considered below.

-6-

1.     Christopher Vandenakker

Christopher Vandenakker is employed at RMI as a corrections officer. (Compl.

¶¶ 7, 14, ECF No. 1, PageID.7-8).  On March 2, 2015, at approximately 2:10 p.m.,

plaintiff stopped Officer Vandenakker and told him that the power was out in his cell.

The power had been out in the housing unit for most of the day.  Plaintiff was

informed that he and the other prisoners would have to wait until the power was

restored. (*Id.* at ¶ 14, PageID.9).

 Plaintiff states that he has high blood pressure and an unspecified "heat

related illness." He indicated that he needed to use his fan and showed Officer

Vandenakker "medical documentation."  Officer Vandenakker offered plaintiff the

opportunity to take a shower, but failed to satisfy plaintiff's demand that he restore

the electricity. (*Id.* at ¶ 21, PageID.13).

On March 3, 2015, plaintiff filed a grievance against Officer Vandenakker and

RMI's grievance coordinator assigned it Grievance No. RMI-2015-03-0408-17Z.  (*Id.*

at ¶ 14, PageID.10; ECF No. 1-1, PageID.18).  The Step I grievance response indicated

that on March 2, 2015, approximately ten cells inside RMI's Unit J-3 lost power.  A

maintenance request was submitted.  Prison staff members are not authorized to

address maintenance issues.  Officer Vandenakker fielded a number of prisoner

questions regarding when the maintenance staff would have the power restored.

When plaintiff suggested that he had a medical problem, Officer Vandenakker

contacted health care.  Health care staff spoke to plaintiff over the phone and

provided him with instructions.  Plaintiff's grievance was denied at Step I of the

grievance process.  (*Id.* at PageID.19).  His grievance appeal was denied at Step II.
(*Id.* at PageID.21).  The Step II decision was upheld at Step III.  (*Id.* at PageID.22).

> ### 2.  Steve Schneider

Steve Schneider is employed at RMI as an Assistant Resident Unit Supervisor
(ARUS) (Compl. ¶¶ 6, 14, ECF No. 1, PageID.7-8).  On March 5, 2015, RUM
Schneider allegedly confronted plaintiff regarding his grievance against Officer
Vandenakker and plaintiff claims that in the verbal exchange that followed,
Schneider indicated that plaintiff needed a change of scenery.  On March 9, 2015,
plaintiff was moved from RMI Housing Unit J-3 to Housing Unit I-3.  (*Id.* at ¶ 15,
PageID.10).  Plaintiff lost a work assignment as a result of his transfer between
housing units.  (*Id.* at ¶ 22, PageID.13).  Plaintiff states that, on March 9, 2015, he
sprained his back lifting his footlocker.  (*Id.* at ¶ 15, PageID.10).

Plaintiff filed a grievance against ARUS Schneider and RMI's grievance
coordinator assigned it Grievance No. RMI-2015-03-0470-17B.  Plaintiff complained
that ARUS Schneider retaliated against him by moving him between RMI's housing
units.  (ECF No. 1-1, PageID.23).  The Step I grievance response indicated that
plaintiff had been moved because it was in his best interest.  (*Id.* at PageID.24).
Plaintiff pursued an appeal.  The Step II appeal response noted that on
March 23, 2015, plaintiff was transferred to the Marquette Branch Prison (MBP)
because he had a need for single cell placement and stair restrictions that could not
be met at RMI.  On April 28, 2015, plaintiff was transferred back to RMI because his
stair restriction had been discontinued.  Plaintiff's grievance appeal was denied at

Step II.  (*Id.* at PageID.26).  The Step II decision was upheld at Step III.  (*Id.* at PageID.27).

On April 10, 2015, RMI's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. RMI-2015-04-0712-17B.  This was a grievance against ARUS Schneider and RMI's Transfer Coordinator Meashell Lawson.  Plaintiff complained that his security screen was false and that it was designed to have him transferred from security level IV at RMI to a security level V prison.[3]  (ECF No. 1-1, PageID.28).  Plaintiff's grievance was denied at Step I.  The transfer order plainly stated that plaintiff was being transferred to a security level V facility because his need for a single cell and stair restriction, which could not be accommodated at RMI.  (*Id.* at PageID.29).  The Step II response noted that plaintiff had been transferred to MBP on March 23, 2015, because his needs for a single cell and stair restrictions could not be satisfied at RMI.  On April 28, 2015, plaintiff was transferred back to RMI when his stair restriction was discontinued.  Plaintiff's appeal was denied at Step II and that decision was upheld at Step III.  (*Id.* at PageID.31-32).

### 3.    Laci Grembowski

Laci Grembowski is employed at RMI as an ARUS.  (Compl. ¶¶ 8, 14, ECF No. 1, PageID.7-8).  Plaintiff complained of back problems, and on March 15, 2015, he obtained a transfer to RMI Housing Unit J-1.  (*Id.* at ¶ 16, PageID.10).  The next day, ARUS Grembowski spoke to plaintiff in an "unprofessional, intimidating manner."

---

[3] "Level V is the highest security level of the five-level Michigan classification system[.]"  *Mays v. Gorman*, 1:11-cv-694, 2013 WL 504234, at *1 (W.D. Mich. Feb. 12, 2013).

(*Id.* at ¶ 17, PageID.10).  Approximately two hours later, ARUS Grembowski told plaintiff to pack up in preparation for a move to another housing unit.  Plaintiff responded that another officer had moved him to the ground floor assignment in Housing Unit J-1 based on his back strain complaints.  He then proceeded to health care to see a nurse about his back problem.  Plaintiff states that he obtained a "ground floor detail" and showed it to ARUS Grembowski.  (*Id.* at ¶¶ 17, 23, PageID.11, 13).  Plaintiff claims that during a review of his grievance against Schneider complaining about the change in his cell assignment from RMI Housing Unit J-3 to Housing Unit I-3, he attempted to convince Resident Unit Manager (RUM) Robert Sutherland that ARUS Grembowski had joined in efforts to retaliate against him by seeking to move him from his new ground floor cell assignment.  RUM Sutherland indicated that he would take care of it.  On March 18, 2015, plaintiff was transferred to MBP.  During the transfer process, plaintiff had a brief stay of four days at the Chippewa Correctional Facility (URF).  (*Id.* at ¶ 18, PageID.11).

4.    Robert Sutherland

Robert Sutherland is employed at RMI as a resident unit manager (RUM). (Compl. ¶¶ 9, 14, ECF No. 1, PageID.7-8).  Plaintiff alleges that RUM Sutherland was the direct supervisor of ARUS Grembowski and ARUS Schneider and that he neglected his duty to correct and control the actions of his subordinates.  (*Id.* at ¶ 24, PageID.13).

5.    Gregory Skipper

Gregory Skipper is employed at RMI as a deputy warden.  (Compl. ¶¶ 10, 14,

ECF No. 1, PageID.7-8).  On March 18, 2015, RMI's Transfer Coordinator Meashell Lawson prepared a security classification screen.  Deputy Warden Skipper agreed that plaintiff's overall institutional history warranted a security level increase.  On March 18, 2015, he approved the security classification screen.  (ECF No. 1-1, PageID.33).  Plaintiff was transferred to security level V at MBP to accommodate his need for a single cell and stair restriction.  (*Id.* at PageID.31).  Plaintiff states that he was transferred in retaliation for filing a grievance, not because RMI could not accommodate his needs.  According to plaintiff, there are no steps on RMI's ground floor and there was no need for his transfer.  (Compl. ¶ 19, ECF No. 1, PageID.11-12).

6.    Meashell Lawson

Meashell Lawson is employed at RMI as the transfer coordinator.  (Compl. ¶¶ 1, 14, ECF No. 1, PageID.7-8).  Plaintiff alleges that Lawson provided false information in plaintiff's security screen as a means to have him transferred to security level V.  (*Id.* at ¶ 19, PageID.12; ECF No. 1-1, PageID.33).

7.    Kurt Schafer

Kurt Schafer is employed at RMI as a corrections officer.  (Compl. ¶¶ 12, 14, ECF No. 1, PageID.8).  On June 29, 2015, Officer Schaefer instructed plaintiff to bring his property to the officer's desk in preparation for a transfer.  Plaintiff was ordered to return to his cell.  When he returned to pick up his property, he found that his padlock and television were damaged.  (*Id.* at ¶¶ 20, 27, PageID.12, 14).

**Discussion**

**I.    Eleventh Amendment Immunity**

Plaintiff's claims for damages against defendants in their official capacities are

barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).  Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.  Defendants are entitled to dismissal with prejudice of plaintiff's claim for monetary damages against them in their official capacities.

## II.    Personal Property

Plaintiff claims that Officer Schafer violated his Fourteenth Amendment due process rights when he damaged plaintiff's personal property.  Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation

-12-

was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).

Because plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his section 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. *See Ellington v. Karkkila*, No. 2:16-cv-230, 2017 WL 1531879, at *6 (W.D. Mich. Apr. 28, 2017) (listing available remedies). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Plaintiff's claim against defendant Schafer be dismissed for failure to state a claim upon which relief can be granted.

## III.    Vicarious Liability

Plaintiff's claim against RUM Sutherland should be dismissed with prejudice for failure to state a claim upon which relief can be granted. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a

-13-

theory of *respondeat superior* or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege facts indicating that RUM Sutherland engaged in active unconstitutional behavior.

## IV.    Eighth Amendment

Plaintiff alleges that defendant ARUS Vandenakker violated his "Fourteenth Amendment" rights on March  2, 2015, when he failed to turn the power back on when he knew that plaintiff was suffering from a heat related illness.  (Compl. ¶ 20, ECF No. 1, PageID.13).  As a prisoner incarcerated under a criminal conviction, plaintiff's principal substantive rights are guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977).

-14-

The Eighth Amendment limits the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Eighth Amendment therefore prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (*per curiam*) (quoting *Rhodes*, 452 U.S. at 346).  The Eighth Amendment also requires the states to provide prisoners with the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347.  The Eighth Amendment is concerned only with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Id.* at 348.  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  Allegations of temporary inconveniences, such as being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not constitute conditions falling beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

Defendants seek dismissal of all plaintiff's claims for damages against defendants in their individual capacities based on the second prong of the qualified immunity analysis.  (Defendants' Brief at 4-5, ECF No. 26, PageID.141-42).  Defendants argue that there is no clearly established law that would have put ARUS Vandenakker on notice that contacting healthcare regarding plaintiff's complaints of

medical problems and maintenance officials regarding electrical problems would violate plaintiff's clearly established constitutional rights.  (*Id.* at 6-7, PageID.144-45).

Plaintiff argues that ARUS Vandenakker violated his clearly established Eighth Amendment rights regarding medical care, citing the Supreme Court's decision in *Estelle v. Gamble*, 429 U.S. 97 (1976) and a number of other cases from outside the Sixth Circuit.  (Plaintiff's Brief at 5, ECF No. 32, PageID.170).  In *Estelle*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  429 U.S. at 104 (citation and quotion omitted).  The Court was careful to point out that this "does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  The Supreme Court remanded the matter for application of the general standard to determine whether the plaintiff had stated a claim against prison officials.  *Id.* at 108.  *Estelle* did not clearly establish the law regarding the situation defendant faced and none of the other cases cited by plaintiff warrant discussion beyond noting that they did not clearly establish the law within the Sixth Circuit at the time defendant Vandenakker acted.

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Brosseau v. Haugen*, 543 U.S. at 198 (quotation omitted).   Courts are "not to define clearly established law at a high level of

generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see White v. Pauly*, 137 S. Ct. at 552.  Defendant Vandenakker is entitled to qualified immunity on all plaintiff's claims for damages against him in his individual capacity.

## V.    First Amendment

Plaintiff alleges various forms of "retaliation" against him by all other defendants in violation of his First Amendment rights.  Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  The plaintiff has the burden of proof on all three elements.  *See, e.g., Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

A.    <u>Protected Conduct</u>

The filing of a prison grievance is generally constitutionally-protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).  Because defendants did not contest this element (Defendants' Brief at 8, ECF No. 26 PageID.144), no further discussion of the protected conduct element is necessary.

B.    <u>Adverse Action</u>

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. Defendants argue that, with regard to plaintiff's claim against defendant Schneider, there was no clearly established law indicating that transferring plaintiff from one RMI housing unit to another would be a sufficiently adverse action to support a retaliation claim. Similarly, defendants argue that there was no clearly established law indicating that defendant Grembowski's actions of ordering plaintiff to pack up his property in connection with a cell move was sufficiently adverse to support a First Amendment retaliation claim. (Defendants' Brief at 8-9, PageID.144-45).

In response to these arguments, plaintiff cites *Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005). *Siggers-El* did not clearly establish the law with regard to the situation defendants Schneider and Grembowski faced because it involved a transfer between prisons, not housing units within a prison. Further, the Sixth Circuit's holding in *Siggers*-El was based on a unique set of facts related to the prisoner's access to court in connection with his appeal of his criminal conviction.[4]

---

[4] Siggers-El was an inmate at the Mound Correctional Facility in Detroit, Michigan. He was in the process of appealing his criminal conviction. He had contacted a Detroit lawyer who had agreed to review his appellate brief and criminal conviction file for $300. The attorney also agreed to personally interview Siggers-El at the Mound Correctional Facility for another $300. The defendant was involved in the disbursement of funds from prisoner accounts and he knew that Siggers-El needed the money to pay his attorney. 412 F.3d at 697. The evidence showed that the security classification screen conducted by the defendant and the prisoner's transfer to the Adrian Regional Facility was anything but routine. *Id.* at 697-98. "As a result of this transfer, Siggers-El lost his high paying job at the Mound Correctional Facility that he needed to pay his lawyer. Moreover, the transfer made it more difficult for

"[G]enerally, a transfer to another institution 'does not constitute an adverse action since a transfer is merely an ordinary incident of prison life.' " *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (quoting *Siggers-El v. Barlow*, 412 F.3d at 704). It is well established that a prisoner has no constitutional right to prison employment or to a particular prison job. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job.").

The Sixth Circuit has held that merely transferring a prisoner to a different facility is not adverse conduct without a showing that the prisoner suffered something more, such as a denial of access to the courts, loss of a work assignment necessary to pay the attorney assisting in his appeal of his criminal conviction, or placement in a significantly more restrictive prison environment. *See Hermansen v. Kentucky Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014) (*per curiam*); *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005). Defendants Schneider and Grembowski are entitled to qualified immunity on plaintiff's claims for damages against defendants in their individual capacities.

C.   Causation

The third element of a retaliation claim addresses whether a defendant's subjective motivation for taking the adverse action was at least in part to retaliate

---

Siggers-El's attorney to visit and represent him by moving him to a remote prison." *Id.* at 698-99. The Sixth Circuit upheld the district court's denial of summary judgment because, under the facts presented, the adverse consequences to the prisoner's access to court were reasonably foreseeable and could deter a person of ordinary firmness from engaging in protected conduct. *Id.* at 702-04.

against the prisoner for engaging in protected conduct.  *Thaddeus-X*, 175 F.3d at 399.

If the prisoner can show that the defendant's adverse action was at least partially

motivated by the prisoner's protected conduct, then the burden shifts to the defendant

to show that he or she would have taken the same action even absent such protected

conduct.  *Id.*

Transfer Coordinator Lawson prepared the security classification screen and

Deputy Warden Skipper signed it.  The security screen resulted in plaintiff's transfer

to a security level V prison.  Defendants Skipper and Lawson have not squarely

framed the causation issue under the second prong of the qualified immunity

analysis.  Instead, they revert back to the first prong and argue that plaintiff's

allegations are conclusory and insufficient to support the causation element.

(Defendants' Brief at 9-11, ECF No. 26, PageID.145-47).  Plaintiff has alleged enough

facts at the pleading stage to support the causation element on retaliation claims

against these defendants.  Plaintiff alleges that the reasons for his transfer to a

security level V prison were a pretext, and that the real reason was to punish him for

filing grievances.  He states that there were no steps on RMI's ground floor and that

there was no need for his transfer to a security level V prison.  Defendants' motion

should be denied on plaintiff's retaliation claims against defendants Lawson and

Skipper.

## <u>Recommended Disposition</u>

For the reasons set forth herein, I recommend that defendants' motion to

dismiss (ECF No. 25) be granted in part and denied in part.  I recommend that all

plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I recommend that all plaintiff's claims against defendants Schafer and Sutherland be dismissed for failure to state a claim upon which relief can be granted. I recommend that defendants' motion be granted as to all plaintiff's claims against defendants Vandenakker, Schneider, and Grembowski.   I recommend that defendants' motion be denied on plaintiff's First Amendment retaliation claims against defendants Lawson and Skipper.


Dated: December 27, 2017                      /s/  Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).